**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DIOCESE OF ROCHESTER,<br><br>       Debtor. | Case No. 19-20905<br>Chapter 11 |
| THE CONTINENTAL INSURANCE COMPANY, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey,<br><br>       Plaintiff,<br><br>v.<br><br>DIOCESE OF ROCHESTER,<br><br>       Defendant. | Adv. Proc. No. 23-02014 |

## CONTINENTAL'S OMNIBUS REPLY IN SUPPORT OF APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE PRIORITY CLAIMS AND OBJECTION TO MOTIONS TO DISMISS ADVERSARY COMPLAINT FOR DEBTOR'S BREACH OF CONTINENTAL SETTLEMENT AGREEMENT

The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey ("Continental"), hereby submits this omnibus reply in support of its *Application for Allowance and Payment of Administrative Expense Priority Claims for Debtor's Breach of Continental Settlement Agreement* [Docket No. 2314] (the "Application")[1] and in response to Debtor's *Objection to the Application of the Continental Insurance Company for Allowance and Payment of Alleged Administrative Expense Priority Claims* [Docket No. 2406] (the "Debtor's Objection"), Debtor's

---

[1] Unless otherwise indicated, capitalized terms have the meanings assigned to them in the Application.

*Motion to Dismiss the Adversary Complaint of The Continental Insurance Company* [Adv. Proc. 23-02014, Docket No. 8] (the "Debtor's Motion"), and *The Official Committee of Unsecured Creditors' Consolidated Motion to Dismiss the Complaint in Adversary Proceeding Number 23-AP-2014 and to Deny Continental Insurance Company's Application for Allowance and Payment of Administrative Expense Priority Claims for Debtor's Breach of Continental Settlement Agreement* [Docket No. 2408; Adv. Proc. 23-02014, Docket No. 10] (the "Committee's Motion," and collectively with the Debtor's Objection and the Debtor's Motion, the "Objections").[2]

In support thereof, Continental respectfully states as follows:

## I. INTRODUCTION

Continental's *Adversary Complaint* [Docket No. 2312; Adv. Proc. 23-02014, Docket No. 1] and the Application plead the elements of the Debtor's breach of contract and the relevant facts and circumstances. The factual and legal sufficiency of the Debtor's excuses should be saved for trial. Thus, the motions to dismiss must be denied under *Iqbal* and *Twombly*, and the Objections should be overruled.

## II. THE OBJECTIONS SHOW THAT FACT ISSUES ABOUND AND REQUIRE A TRIAL ON THE MERITS.

### A. The Rule 12(b)(6) Standards Apply to the Objections.

The Bankruptcy Rules make Federal Rule of Civil Procedure 12(b)(6) applicable to the motions to dismiss the Adversary Complaint. *See* Fed. R. Bankr. P. 7012(b). In the context of a motion to dismiss, courts assess the sufficiency of the facts alleged in support of the Claim in light of the pleading requirements under Rule 8(a) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7008. Rule 8(a)(2) states that a claim for

---

[2] The Committee is not a party to the Adversary Proceeding. The Committee's Motion in the Adversary Proceeding should be denied on that basis alone.

relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that standard, the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted).

The same standard applies to a court's consideration of an objection to a claim. "In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer." *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996). The Bankruptcy Rules provide for this result. An objection to a claim gives rise to a contested matter. Bankruptcy Rule 9014 governs contested matters, and while it does not explicitly provide for application of Bankruptcy Rule 7012, it does provide that a bankruptcy court

"may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014.

> **B. Contrary to the Debtor's Earlier Conduct of the Case, the Objections Posit that the Continental Settlement Agreement Could Never Have Been Approved.**

Ignoring the well-pled allegations in the Complaint, the Objections are premised on the idea that the Continental Settlement Agreement could never have been approved. But this is contrary to the business decision of the Debtor in deciding to enter into the Continental Settlement Agreement. And it is contrary to the statements made by the Debtor (and Debtor's counsel under Rule 11) each time it filed motions to approve the Continental Settlement Agreement, first in the Adversary Proceeding and again in the main case.

Each time the Debtor filed the Insurance Settlement Motion, it averred to the Court and the creditors that "the proposed settlement proceeds [are] sufficient and appropriate to adequately and fairly compensate the survivors for their injuries, and that the Diocese's decision in agreeing to settle its coverage claims against the Settling Insurers [including Continental] more than satisfies the reasonableness standard of Bankruptcy Rule 9019 and the business judgment test under section 363 of the Bankruptcy Code." The Debtor further asserted in the Insurance Settlement Motion that "[e]ntering into the settlement agreements is in the best interests of the Diocese's estate," "the potential upside of continued [insurance coverage] litigation at this point is significantly outweighed by the potential downside, especially in light of the substantial settlement offers currently before the Court," and the proposed settlements, including the Continental Settlement Agreement, would "(i) provide a concrete financial benefit to the estate, specifically earmarked for Survivor Claims; (ii) eliminate the underlying uncertainty of litigation; and (iii) avoid the expenditure of estate resources on expensive and time-consuming coverage litigation."

4
Case 2-23-02014-PRW, Doc 15, Filed 01/16/24, Entered 01/16/24 18:17:04, Description: Main Document, Page 4 of 17

Furthermore, this Court rejected the Committee's motion to deny the motions to approve the Continental Settlement Agreement as moot, indicating that the Continental Settlement Agreement might have been approved if the Debtor met its obligations to Continental by pursuing approval, as required by the terms of the Continental Settlement Agreement. On December 8, 2023, this Court entered its *Decision and Order Denying Committee's Motion Requesting a Determination that Motion Seeking Approval of Settlement Agreement Between Diocese and CNA is Moot* [Docket No. 2363] (the "Mootness Decision"), in which the Court held that "because the settlement agreement is not a nullity, the motion seeking Court approval of that settlement agreement is not moot." Mootness Decision, p.2. The Court's rejection of the Committee's argument that the Continental Settlement Agreement is a nullity means that Continental's breach claim must survive a motion to dismiss under *Iqbal* and *Twombly*. *See In re Legarde*, 654 B.R. 74, 85 (Bankr. E.D. Penn. 2023) (quoting *In re United Shipping Co.*, 1989 WL 12723, at *8 (D. Minn. Feb. 17, 1989) ("The considerations a court looks at in approving a settlement are entirely different from the considerations informing whether there was an agreement at all and '[t]his court will not rescind a settlement agreement merely because one party knows it made a bad bargain.'").

    **C.    The Debtor's Argument That It Did Not Agree to be Bound to the Continental Settlement Agreement is Contrary to the Complaint's Well-Pled Allegations and What the Evidence Will Show at Trial.**

The Debtor pretends that it had not agreed to the Continental Settlement Agreement, pointing to the fact that it did not add its signature to the version filed with the Court. However, under New York law, a signature on a written agreement is not required for a party to be bound. "There does not need to be a signed writing: The New York Court of Appeals has long held that a contract may be valid even if it is not signed by the party to be charged, provided its subject matter does not implicate a statute that imposes such a requirement. So long as objective evidence of an intent to be bound exists, an unsigned contract may be enforced." *Meloni v. RGM*

5
Case 2-23-02014-PRW, Doc 15, Filed 01/16/24, Entered 01/16/24 18:17:04, Description: Main Document , Page 5 of 17

*Distribution, Inc.*, 201 F. Supp. 3d 360, 370-71 (E.D.N.Y. 2016) (cleaned up); *see also Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 368, 795 N.Y.S.2d 491, 828 N.E.2d 593, 596 (2005); *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 124 (2d Cir. 2011).

Continental adequately alleged that it reached agreement with the Debtor and that the parties intended to be bound. *See, e.g.*, Adversary Complaint, ¶¶ 17 ("These efforts proved successful and ended in an agreement . . . ."), 45 ("The Debtor and Continental entered the Continental Settlement Agreement . . . ."), 47 ("The Continental Settlement Agreement is a valid and enforceable contract that obligated the Debtor to present the Continental Settlement Agreement to this Court for approval unless and until terminated according to its terms."). Consistent therewith, the Debtor prepared an "execution version" of the Continental Settlement Agreement, then solicited and obtained Continental's signature on it. Presumably, this was done at the direction and with the approval of the Debtor. At a minimum, this presents a factual issue for litigation, not a basis to dismiss or disallow the Continental Administrative Expense Claim as a matter of law.

Further, the Debtor did file the Continental Settlement Agreement with the Court, representing that it should be approved because it reflected the reasonable exercise of the Debtor's judgment, under the signature of Debtor's counsel submitted subject to Rule 11. In those filings, the Debtor averred that "that the Diocese's decision in agreeing to settle its coverage claims against the Settling Insurers [including Continental] more than satisfies the reasonableness standard of Bankruptcy Rule 9019 and the business judgment test under section 363 of the Bankruptcy Code." In other words, not only did the Debtor submit a writing urging that the Court approve its

agreement with Continental, but the Debtor also alleged that it actually exercised its business judgment in agreeing to enter into the Continental Settlement Agreement.

The evidence at trial will show that the Debtor did agree to be bound. This evidence is alleged in detail by Continental, using the Debtor's own words in pleadings filed with the Court. These well-pled allegations satisfy *Iqbal* and *Twombly*.

**D.    The Suggestion That the Parishes Had Not Agreed to the Continental Settlement Agreement is Probably Untrue and Certainly Irrelevant.**

Side-stepping the fact that the Debtor agreed to the Continental Settlement Agreement and argued to the Court that the Continental Settlement Agreement could and should be approved, the Debtor now suggests that its parishes had not agreed. Assuming this fact matters given that the Application is asserted against the Debtor, the argument assumes facts that are probably untrue and, at a minimum, require discovery and a trial to establish. Continental doubts that the Debtor would have filed the motion to approve the Continental Settlement Agreement if it did not have the agreement of its affiliated parties or, at least, every reason to believe that their approvals could be obtained. Indeed, given the governance structure of a diocese, the idea that the pastor of a parish or its parish council would refuse to consent to their bishop's agreement seems unlikely. And even if a recalcitrant pastor refused to agree, the agreement of all parishes is a condition to the Continental Settlement Agreement that is waivable by Continental.

Moreover, the Debtor warranted in section 6.1.1 of the Continental Settlement Agreement that it had the requisite power and authority to enter into and perform the Continental Settlement Agreement. That warranty alone requires that the Objections be overruled under *Iqbal* and *Twombly*.

### E. The Argument That the Continental Settlement Agreement's Effective Date Has Not Occurred is Irrelevant.

Continuing its parade of reasons why the Debtor should not be bound to what it agreed, the Debtor argues that Continental failed to plead that the Settlement Agreement Effective Date has occurred and, therefore, there can be no breach of contract. That cannot possibly be right.

The Continental Settlement Agreement must be interpreted according to its plain terms and construed as a whole, and the Debtor's opportunistic interpretation is belied by the agreement's terms. The Settlement Agreement Effective Date is defined as the date after which, among other things, the Approval Order approving the Insurance Settlement Motion becomes a Final Order, the Confirmation Order becomes a Final Order, and the Trust is created pursuant to the Plan. For those events to occur, and the Settlement Agreement Effective Date to come to pass, the parties had to abide by their other obligations in the Continental Settlement Agreement well beforehand.

In other words, the Continental Settlement Agreement (like many agreements) includes many obligations to be performed in advance of its effective date, such as the parties' obligations to work together to obtain Court approval, the Debtor's obligation to propose a Plan consistent with the terms of the agreement, and the covenant to stand down in litigation and not to sue each. Indeed, the Debtor promptly began performing pursuant to section 2.1 by (twice) filing the Insurance Settlement Motion, which the Debtor acknowledges. It is the Debtor's breach of other obligations under the Continental Settlement Agreement, such as the obligation to file a Conforming Plan, that form the basis of Continental's breach claim. *See e.g.*, Adversary Complaint, ¶¶ 47-52.

Tellingly, under the Debtor's new reading, the termination provision it negotiated in section 5.2 would make no sense because it expressly provides for termination if certain events occur "*prior to* the Settlement Agreement Effective Date." (Emphasis added.) Rather, the Debtor

agreed in section 8.20 that the "Settlement Agreement and the Diocese's obligations under this Settlement Agreement shall be binding on the Diocese and the Reorganized Debtor and shall survive the entry of the Plan Confirmation Order," independent of the parties' agreement in section 8.21 that the "Settlement Agreement shall be effective on the Settlement Agreement Effective Date."

### F. No Changed Circumstances Justify the Debtor's Change in Approach.

The Debtor argues that changed circumstances warranted a change in approach by the Debtor. First, changed circumstances cannot justify the Debtor's breach of the Continental Settlement Agreement where the parties negotiated detailed termination provisions that do not include the Debtor's subjective view of changed circumstances. Even if changed circumstances could justify the Debtor's breach, the only changed circumstance pointed to by the Debtor is the Court's decision not to extend the preliminary injunction. The evidence will show that the Debtor knew that was a distinct possibility, perhaps even a likelihood, at the time it entered into the Continental Settlement Agreement and filed it with the Court.

In fact, the hearing on the extension of the preliminary injunction of tort claims occurred on April 27, 2022. At that hearing, the Court expressed great concern and skepticism about a further extension of the preliminary injunction. The Debtor nonetheless finalized its agreement with Continental and filed the Insurance Settlement Motion approximately one month later. Thus, the circumstances pointed to by the Debtor had already begun to change. In any event, to the extent that the Debtor suggests it has an excuse for its breach, the Debtor will bear the burden to establish the factual existence of that excuse and its legal sufficiency at trial.

### G. Whether or Not the Debtor is Acting "Disingenuously" is Relevant Only to Whether the Debtor Breached its Duty to Treat Continental In Good Faith and With Fair Dealing.

The Debtor also asserts that it can escape the consequences of its breach because it is not acting "disingenuously." Disingenuousness, of course, is not an element of a breach of contract claim. To the extent the Debtor's disingenuousness is relevant – and it may well be, given the debtor's obligation to treat Continental in good faith and with fair dealing – the evidence will show that the Debtor did behave disingenuously.

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (cleaned up); *see also* 5 Williston, Contracts § 1293, at 3682 [rev ed 1937]).

The Debtor entered into a heavily negotiated and hard fought agreement with Continental, then told the Court and the public that it reached a deal that was of benefit to the bankruptcy estate and should be approved. At the same time, it worked with the Committee in secret to reach a separate deal that the Court has already said is incompatible the Continental Settlement Agreement. Without withdrawing the Insurance Settlement Motion, it now seeks confirmation of a chapter 11 plan that runs contrary to the Continental Settlement Agreement.

To the extent the Debtor maintains that it owed no duties to Continental, the Debtor is both factually and legally wrong. First, the Debtor's position is belied by the express terms of the Continental Settlement Agreement that it negotiated, as well as the Debtor's actions and statements

10
Case 2-23-02014-PRW, Doc 15, Filed 01/16/24, Entered 01/16/24 18:17:04, Description: Main Document , Page 10 of 17

to the Court in filing the Insurance Settlement Motion. Second, bankruptcy does not excuse debtors from the obligations of good faith and fair dealing imposed by New York law. If the Debtor's remarkable position were true, parties would be wary to negotiate anything with any debtor in bankruptcy.

> **H. Continental's Damages Are Well Pled, Easily Understood, and Can be Fixed After a Trial.**

The Objections challenge the idea that Continental was damaged by the debtor's breach. Conveniently, the Committee asserts that Continental cannot claim damages for its increased exposure resulting from the debtor's breach, while at the same time arguing that Continental should be paying – and will be forced to pay under the Debtor's Plan – hundreds of millions of dollars more than the Settlement Amount in the Continental Settlement Agreement or Continental's contribution under the Continental Plan (as defined in the Adversary Complaint).

The Committee also puts up several straw men, including (1) that Continental's damages will arise after confirmation of a plan, and so cannot be administrative expense claims, and (2) that Continental's claims cannot be estimated under the Bankruptcy Code. Plainly, however, Continental's damages flow from the Debtor's breach during the chapter 11 case, and so arise pre-confirmation.

*Zurich American* is not to the contrary. In that case, the insurer sought administrative expense treatment for an actuarial estimate of amounts it would advance for deductibles in the future under an on-going insurance program. *See Zurich Am. Ins. Co. v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 371 B.R. 210, 220-22 (E.D. Ky. 2007). In denying administrative expense priority status, the court relied on the fact that "Zurich is only contractually obligated to pay the deductibles, and subsequently seek reimbursement, once the [personal injury] claims

actually 'arise.'" 371 B.R. at 225. The triggering event for Zurich's obligation, in other words, was a future event that had not occurred during the bankruptcy proceedings.

Here, the triggering event for Continental's damages was the Debtor's breach as a debtor-in-possession during the bankruptcy. Indeed, the entire purpose of the Debtor's breach was to pursue confirmation of a chapter 11 plan with the Committee that is not a Conforming Plan under the Continental Settlement Agreement. Moreover, these claims would be waived under the Continental Plan, demonstrating that the Continental Administrative Expense Claim can and is being addressed as part of the chapter 11 process.

As for estimation, Continental disagrees with the Committee's theory, but the point is irrelevant to this contested matter. The amount of the Continental Administrative Expense Claim very likely impacts the feasibility of the Debtor's Plan, which will be heard by the Court in due course. If Continental (or another party) files an estimation motion between now and the confirmation hearing, the Committee can be heard on its theory then.

In any event, elements of Continental's damages are straightforward to calculate: (1) Continental spent money to negotiate and prepare for a hearing on approval of the Continental Settlement Agreement (an obligation that the Debtor negotiated for Continental to perform, apparently while also preparing for a scenario where the Debtor would breach); (2) Continental spent money to mitigate its damages, including proposing and pursuing confirmation of the CNA Plan; and (3) the Debtor's Plan targets Continental to pay multiples of the Settlement Amount, a figure that the Debtor and the Committee have no trouble estimating in the hundreds of millions of dollars.

## III. THE APPROACH TO THE CONTINENTAL SETTLEMENT AGREEMENT ADVOCATED BY THE OBJECTORS RUNS COUNTER TO THE LAW OF THE SECOND CIRCUIT.

### A. *Liberty Towers* Explains That Debtors in Bankruptcy Are Bound to Their Agreements Pending Court Approval.

This Court has already ruled in this case that "[i]t is well settled in the Second Circuit that 'the parties to a settlement agreement may not unilaterally repudiate it after approval of it has been sought pursuant to Rule 9019.' *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 542 (E.D.N.Y. 2017) (quoting *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386, 392 (M.D. Fla. 2008)), *aff'd*, 734 Fed. Appx. 68 (2d Cir. 2018). As the District Court found in *Liberty Towers*, 'The better view of the law is that settlements requiring court approval are binding on all parties to the extent allowable under state law until the court considers and rejects the settlement.' *Liberty Towers*, 569 B.R. at 542." Mootness Decision, p.4.

*Liberty Towers* sets forth the procedures required when a debtor in bankruptcy enters into a settlement agreement subject to bankruptcy court approval. Simply put, debtors are not free to simply change their minds or negotiate a better deal without meeting their obligations under a binding settlement, including pursuing bankruptcy court approval. *See* 10 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 9019.02 (16th ed. 2023) ("In addition, a trustee or debtor in possession can be compelled to file a motion to approve a compromise or settlement even if the trustee or debtor in possession has changed its mind.").

*Rockville Centre*, cited by the Debtor, is irrelevant to this topic. There is no settlement in that case. The remarks cited by the Debtor were related to the possibility that the debtor in that case might settle with an insurer, then repudiate that settlement and enter into a different settlement with the committee, potentially leading to an administrative claim by the insurer. However, because there was no settlement at issue, much less a settlement approval motion on file for that

court to consider, no party cited *Liberty Towers* for its "well settled" principle that this Court has already embraced. Whatever conclusion the Debtor would like this Court to draw from Judge Glenn's colloquy with counsel has been rejected by this Court's Mootness Decision.

If *Liberty Towers* is not followed, counterparties would be reticent to negotiate or reach agreements with debtors in bankruptcy, undermining the bankruptcy system. For the same reason, the Supreme Court has long recognized an exception to the "benefit to the estate" element of an administrative expense claim for situations like this one. *See Reading v. Brown*, 291 U.S. 471 (1968).

### B. Conditions Precedent in the Continental Settlement Agreement Do Not Mean the Debtor is Not Bound.

The Debtor asserts that it cannot be bound before conditions precedent in the Continental Settlement Agreement are met. That's not what the Continental Settlement Agreement says, however. It spells out in detail what is required by the Debtor and Continental prior to this Court's approval, including provisions for the parties to stand down in their litigation with each other and work together to obtain settlement approval and confirmation of a chapter 11 plan consistent therewith. The Continental Settlement Agreement also explicitly distinguishes between the parties' agreement to be bound and the Effective Date of the agreement. And the Continental Settlement Agreement sets forth detailed termination provisions, including for a scenario where Court approval could not be obtained, which would make no sense if the Debtor were not bound prior to the satisfaction of all conditions.

### C. The Parties Agreed That the Debtor Would Not Have a "Fiduciary Out."

The Debtor admits that the Continental Settlement Agreement contains no "fiduciary out" because Continental would not agree to it. The Debtor's decision to nonetheless finalize an agreement with Continental and submit it for this Court's approval as a reasonable exercise of the

14
Case 2-23-02014-PRW, Doc 15, Filed 01/16/24, Entered 01/16/24 18:17:04, Description: Main Document , Page 14 of 17

Debtor's business judgment reflects that a binding agreement was reached without an escape hatch for the Debtor. The Debtor's admission shows that the Committee is wrong when it imagines that the Continental Settlement Agreement includes an "inherent" fiduciary out. Assuming the concept of a fiduciary out could be squared with the requirements of *Liberty Towers*, it is simply not presented by the facts of this case.

Further, the Committee acknowledges that *Liberty Towers* is applicable law and the correct procedure under the circumstances. Committee's Motion, p.17 ("[T]he Committee recognizes that the Diocese can put the issue forward on the Second Settlement Motion."). Even to the extent there is an "inherent" fiduciary out that the Debtor could have invoked, which Continental disputes, the appropriate way to assert it would have been the procedure dictated by *Liberty Towers*.

### D. There is No Futility Exception to the Requirements of *Liberty Towers*.

With no escape hatch built into the Continental Settlement Agreement for the Debtor, the Objections also imagine there's a futility exception to *Liberty Towers*. The Debtor assumes that claimants would not vote in favor of a plan incorporating the Continental Settlement Agreement, that a cramdown plan could not be confirmed over their objections, and therefore the Continental Settlement Agreement's requirement to obtain a channeling injunction for Continental could not be met. This argument makes several assumptions, some of which will be tested when claimants vote on the competing plans in this case, that should not be taken as given at this stage of the proceedings.

In fact, settlement agreements are approved over objections all the time in bankruptcy court. Sometimes dissenters appeal orders approving settlements, and it is possible that the terms of those settlements might make a creditor vote against acceptance of a plan. But it is also true that some creditors, perhaps even a supermajority, end up accepting a court-approved settlement

as a part of an overall reorganization process involving many moving parts, rather than litigate every issue at every step of the appellate ladder.

Additionally, this is another area where Continental could have waived some of the conditions in the Continental Settlement Agreement, if not preempted by the Debtor's breach. For example, if a broad channeling injunction is not available to all parties in this case (as the Court has recognized might be the consequence of the Supreme Court's impending ruling in *Purdue Pharma*), settling insurers like Continental might accept the relief available through a buyback of insurance policies under section 363(f) of the Bankruptcy Code.

Continental rejects the idea of a futility exception to the Debtor's obligations, but the Debtor will bear the burden to establish the factual existence of that excuse and its legal sufficiency at trial (similar to the Debtor's burden to prove "changed circumstances"). In the meantime, Continental's well-pled allegations, taken as true, sufficiently establish the elements of breach of contract to survive a motion to dismiss under *Iqbal* and *Twombly*, and the Objections should be overruled.

## IV. CONCLUSION

WHEREFORE, Continental respectfully requests entry of an order granting the Application, allowing the Continental Administrative Expense Claim, and directing payment of the Continental Administrative Expense Claim in full pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; overruling all objections to the Continental Administrative Expense Claim; denying the motions to dismiss the Adversary Complaint; and for such other and further relief as the Court deems just and proper.

Dated: January 16, 2024									Respectfully submitted,

    */s/Jeffrey A. Dove*
Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 413-7112
Facsimile: (315) 703-7346
jdove@barclaydamon.com

Mark D. Plevin (admitted pro hac vice)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 986-2800
mplevin@crowell.com

David Christian (admitted pro hac vice)
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

Miranda H. Turner (admitted pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
mturner@crowell.com

*Attorneys for The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey*